**Daniel Joseph MARAVILLA & Rafael Jesus Dominguez, Petitioners,**

**v.**

**UNITED STATES of America, Respondent.**

Civil No. 94–2514 (HL).
Crim. No. 87–161 (HL).

United States District Court,
D. Puerto Rico.

Oct. 18, 1995.

---

**64**

Daniel Joseph Maravilla, Marianna, FL, pro se.

Epifanio Morales–Cruz, U.S. Attorney's Office, District of P.R., Criminal Division, Hato Rey, PR, for respondent.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a *pro se* petition for postconviction relief pursuant to 28 U.S.C. § 2255 filed by Daniel Joseph Maravilla

("Maravilla").[1] In 1987 a jury found that Maravilla and Rafael Jesús Domínguez ("Domínguez) kidnapped, robbed, and murdered a Dominican money courier in September 1982. Maravilla was convicted of depriving an inhabitant of the United States of his civil rights,[2] robbery,[3] receiving and transporting stolen money,[4] and perjury and obstruction of justice.[5] On December 1, 1987, the Court sentenced Maravilla to 120 years in prison. Maravilla appealed his conviction. The First Circuit reversed Maravilla's conviction for the count pertaining to the deprivation of an inhabitant's civil rights, but upheld the conviction for all the other counts. *See United States v. Maravilla*, 907 F.2d 216 (1st Cir.1990). The case was remanded for resentencing, and on January 29, 1991, the Court resentenced Maravilla to 50 years in prison and fined him $30,000. Maravilla appealed his sentence, and the First Circuit affirmed it. *See United States v. Domínguez*, 951 F.2d 412 (1st Cir.1991).

In the present petition, Maravilla argues that he is entitled to relief on the grounds that he was denied a fair trial because the Government failed to disclose requested exculpatory evidence; that the Government committed prosecutorial misconduct; that the Government destroyed vital evidence; that the venue of his trial should have been changed; that the Court's jury instruction on Maravilla's failure to testify was improper; and that he was denied effective assistance of counsel. The Government has opposed Maravilla's petition. For the reasons set forth below, the Court denies this petition for postconviction relief.

## DISCUSSION

*1. Brady claim*

■ At the outset, the Court notes that because this is a *pro se* petition, it will broad-

---

**1.** Maravilla's co-defendant in criminal case 87–161 (HL) was Rafael Jesús Domínguez ("Domínguez"). By a motion filed in the criminal case on August 29, 1995, Domínguez moved to adopt Maravilla's habeas petition. *See* Crim. no. 87–161 (HL), docket no. 253. On this same date, the Court has entered an order in criminal case number 87–161 (HL) granting Domínguez' motion to adopt Maravilla's petition. For purposes of brevity in this opinion and order, however, the

Court will refer to petitioners in the singular as "Maravilla."

**2.** 18 U.S.C. §§ 242 & 2.

**3.** 18 U.S.C. §§ 1951(a) & 2.

**4.** 18 U.S.C. §§ 2315, 2314, & 2.

**5.** 18 U.S.C. §§ 1623, 1001, & 1503.

ly construe normal pleading requirements. *See United States v. Michaud,* 925 F.2d 37, 41 (1st Cir.1991). Maravilla claims that the Court is required to hold an evidentiary hearing on his petition. When a federal habeas petition is presented to the judge who presided at the defendant's trial, the judge may use the knowledge gained at prior proceedings and make findings without holding a hearing. *United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993). The undersigned presided at Maravilla's jury trial. Based on the evidence presented at his trial and on the record as a whole, the Court concludes that an evidentiary hearing is unnecessary.

Maravilla argues that he was denied a fair trial when the Government failed to disclose prior to his trial the existence of certain exculpatory evidence. Specifically, Maravilla refers to two reports by the Federal Bureau of Investigation. In one, the F.B.I. reported that on July 11, 1985, it found a bullet "of approximately .22 caliber" at a site approximately 25 feet from the place where the victim's body was found.[6] In the other report, the F.B.I. interviewed in April 1984 an individual who had been working as a gas station attendant at the time of the victim's murder. The individual remembered seeing photographs of the victim in the paper and he remembered thinking at the time that he had seen a person who resembled the victim with three other men in a white van that had come to the gas station. The individual could not be sure of the date of the incident. When he was shown photographs of the victim and of Maravilla, he could not be sure that he had ever seen them.[7]

■ The Government's failure to provide upon request evidence which is favorable to the defendant constitutes a violation of due process when the evidence is material to guilt or punishment. *Kyles v. Whitley,* — U.S. —, —, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (quoting *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963)). The Constitution is not violated every time that the Government fails to disclose exculpatory evidence. *Kyles,* — U.S. at —, 115 S.Ct. at 1567. Exculpa-

tory evidence is material, and a constitutional error results from its suppression, " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles,* — U.S. at —, 115 S.Ct. at 1565 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 685, 105 S.Ct. 3375, 3383, 3385, 87 L.Ed.2d 481 (1985)); *Gilday v. Callahan,* 59 F.3d 257, 267 (1st Cir.1995). A reasonable probability of a different result is shown when the Government's suppression of evidence " 'undermines confidence in the outcome of the trial.' " *Kyles,* — U.S. at —, 115 S.Ct. at 1566 (quoting *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381). The question is whether, in the absence of the suppressed evidence, the defendant received a trial that is "worthy of confidence." *Kyles,* — U.S. at —, 115 S.Ct. at 1566. In making this determination, a court must consider the cumulative effect of all the suppressed evidence. *Kyles,* — U.S. at —, 115 S.Ct. at 1567; *Gilday,* 59 F.3d at 272.

■ In the case before the Court, Maravilla claims that the Government's failure to disclose the evidence regarding the .22 caliber bullet and the gas station employee deprived him of a fair trial. The Court disagrees. The excluded evidence had little materiality and thus little exculpatory value. The bullet was found at the site where the victim was discovered. However, the bullet was found on July 11, 1985, more than two and a half years after the victim was murdered. More importantly, a serologist's test of the bullet determined that it contained no human protein. *See* Docket no. 8, exhibits C & D. Near the .22 caliber bullet the F.B.I. also discovered a rusted metal can that had a bullet hole of a size that could have been caused by a .22 caliber bullet. *See id.,* exhibit C. Thus, it appears that the bullet was used as target practice for someone shooting the can. *See id.*

Another factor reduces the exculpatory value of the .22 caliber bullet. The Government's case consisted primarily of evidence of Maravilla and Domínguez' opportunity to

---

6. *See* Docket no. 1, exhibit E.

7. *See* Docket no. 1, exhibit E.

commit the crime and evidence of the money that they obtained from the courier. The First Circuit ruled that this evidence was sufficient to convict Maravilla. *See Maravilla,* 907 F.2d at 218–19. No ballistics reports were presented in the case. The Government did present evidence that Domínguez tried to replace the barrel of his gun, but this was not the strongest part of the Government's case. *See id.* at 218–19, 221–22. Thus, the evidence of the .22 caliber bullet does not pertain to the main thrust of the Government's case against Maravilla.

The evidence regarding the gas station attendant is similarly lacking in materiality and exculpatory value. The attendant was interviewed on April 30, 1984, more than a year and a half after the crime. He stated that he could not be sure of the exact date, but approximately two years previous he thought he had seen a man who resembled the victim in a white van. Two years prior to the interview would have been April 1982; however, the crime took place in September 1982. During the interview, the attendant was shown a photograph of the victim. The attendant was not certain that the person he had seen in the van was the victim. *See* Docket no. 1, exhibit E. Because of the attendant's wavering and uncertain memory, there is little exculpatory value in his story.

The Court has considered the cumulative effect of this suppressed evidence. *See Gilday,* 59 F.3d at 272. The evidence of both the gas station attendant's story and the .22 caliber bullet have limited, if any, exculpatory value. Accordingly, the Government's exclusion of this evidence does not undermine confidence in the outcome of Maravilla's trial. *See Kyles,* —— U.S. at ——, 115 S.Ct. at 1566. The Court finds that the excluded evidence was not material. Therefore, there is not a reasonable probability that, had the evidence of the .22 caliber bullet and the gas station attendant been disclosed to Maravilla, the result of his trial would have been different. *See Kyles,* —— U.S. at ——, 115 S.Ct. at 1565; *Gilday,* 59 F.3d at 267. Accordingly, the Court denies Maravilla's request for relief based on this claim.

### 2. Sixth Amendment claim

■ Maravilla also argues that he is entitled to postconviction relief because he was denied effective assistance of counsel. Specifically, Maravilla claims that his trial attorney did not spend enough time meeting with Maravilla prior to trial; that his trial attorney proceeded to trial even though he was unprepared; and that his attorney at trial refused to let him testify on his own behalf. Maravilla also claims that his attorney for his appeal failed to provide effective assistance. A criminal defendant's claim that his own counsel violated his right to testify on his behalf is properly viewed as a claim of ineffective assistance of counsel. *United States v. Teague,* 953 F.2d 1525, 1535 (11th Cir. 1992); *United States v. Moskovits,* 815 F.Supp. 147, 153 n. 14 (E.D.Pa.1993).

■ The Sixth Amendment guarantees a criminal defendant effective assistance of counsel in order to protect that defendant's fundamental right to a fair trial. *Strickland v. Washington,* 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The Constitution does not guarantee defendant a perfect or successful defense; rather, he is guaranteed " 'reasonably effective assistance under the circumstances then obtaining.' " *Lema v. United States,* 987 F.2d 48, 51 (1st Cir.1993) (quoting *United States v. Natanel,* 938 F.2d 302, 309–10 (1st Cir.1991)). A court should evaluate the challenged conduct not with the benefit of hindsight, but from the attorney's perspective at the time of the trial. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Lema,* 987 F.2d at 51. There is a strong presumption that the counsel's performance comes within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. A petitioner must show, first, that his counsel's performance was deficient and, second, that this deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Bonneau v. United States,* 961 F.2d 17, 20 (1st Cir.1992). The petitioner must show that, but for his counsel's deficient performance, the outcome of his trial would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *United States v. Hart,* 933 F.2d 80, 83 (1st Cir.1991); *Carsetti v. Maine,*

932 F.2d 1007, 1012 (1st Cir.1991). Based on a review of the record, the Court concludes that Maravilla has failed to show that his counsels' performance was deficient and that their performance prejudiced the defense. Thus, Maravilla has failed to meet the standards set forth in *Strickland.* Accordingly, the Court denies Maravilla's request for relief based on this claim.

*3. Claims regarding jury instructions and venue*

■ Maravilla also argues that he is entitled to relief on the grounds that he should have been granted a change of venue for his trial and that the Court's jury instructions regarding Maravilla's right not to testify were improper. Maravilla did not raise either of these issues on appeal. A petition under section 2255 may make a claim for relief on the following grounds: (1) "that the sentence was imposed in violation of the Constitution;" (2) that the sentence was imposed in violation of the laws of the United States; (3) "that the court was without jurisdiction to impose such sentence;" (4) "that the sentence was in excess of the maximum authorized by law;" or (5) that the sentence "is otherwise subject to collateral attack." 28 U.S.C.A. § 2255 (West 1994); *Knight v. United States,* 37 F.3d 769, 772 (1st Cir. 1994). The scope and availability of collateral attack is narrow for a claim that does not allege a constitutional or jurisdictional error. *Knight,* 37 F.3d at 772. Absent exceptional circumstances, a petitioner may not raise in a collateral proceeding a nonconstitutional claim that could have been, but was not, raised on appeal. *Stone v. Powell,* 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976); *Knight,* 37 F.3d at 772.

■ In order to obtain collateral relief, the petitioner must show cause and prejudice. *Suveges v. United States,* 7 F.3d 6, 10 (1st Cir.1993). Under this standard, the petitioner must show both cause for his failure to raise previously the issue and prejudice from the error about which he is complaining. *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). An attorney error which does not constitute ineffective assistance of counsel

will not constitute cause for procedural default. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986); *Gardner v. Ponte,* 817 F.2d 183, 187 (1st Cir.1987). The existence of cause for a procedural default should ordinarily turn on whether the petitioner can show that an external impediment prevented his counsel from raising the claim on appeal. *Murray,* 477 U.S. at 492, 106 S.Ct. at 2648. If a defendant has been represented by an attorney whose performance was not constitutionally ineffective, the defendant must bear the risk that may result in a procedural default. *Id.* To demonstrate prejudice, a petitioner must show that his failure to appeal actually and substantially disadvantaged him and that it infected his trial " 'with error of constitutional dimensions.' " *Casale v. Fair,* 833 F.2d 386, 390 (1st Cir.1987) (quoting *Frady,* 456 U.S. at 170, 102 S.Ct. at 1596). For a challenged jury instruction, the test is whether the instruction infected petitioner's trial to such an extent that his conviction constituted a violation of due process. *Frady,* 456 U.S. at 169, 102 S.Ct. at 1595.

■ In the case before the Court, Maravilla's challenges regarding venue and the jury instructions are nonconstitutional claims. Thus, there is a narrow scope of relief for this claim. He did not, but could have, raised these issues on appeal. In order for him to be entitled to relief, he must show cause for his failure to raise these issues on appeal and prejudice from his failure to do so. In his petition, Maravilla argues that he was denied effective assistance of counsel; that the cause for his failure to raise these issues on appeal was his attorney's refusal to raise them; and that the prejudice he suffered was the First Circuit's affirming his conviction.

The Court has already denied Maravilla's claim for ineffective assistance of counsel. Maravilla's argument—that his cause was his attorney's failure to appeal these issues and his prejudice was that his conviction was affirmed—is not sufficient to establish cause and prejudice. Maravilla has not demonstrated the existence of an external impediment which prevented his counsel from raising these issues on appeal. Thus, his attor-

ney's failure to appeal these issues, without more, does not constitute cause. *See Murray,* 477 U.S. at 492, 106 S.Ct. at 2647–48; *Gardner,* 817 F.2d at 187. Additionally, Maravilla has not demonstrated that his failure to appeal these issues actually and substantially disadvantaged him and that his conviction was thus infected with an error of constitutional dimensions. *See Casale,* 833 F.2d at 390. Thus, Maravilla has also failed to show prejudice. Therefore, he may not now raise the issues of venue and jury instructions. Accordingly, the Court denies his request for relief based on these claims.

*4. Remaining claims*

 Maravilla's remaining claims are that he is entitled to relief on the grounds that the Government committed prosecutorial misconduct and that the Government destroyed vital evidence. The destroyed evidence was the shirt that was discovered with the victim's body. In order to show a constitutional violation for missing evidence, a defendant must show (1) that the government acted in bad faith when it destroyed the evidence; (2) that the evidence had an apparent exculpatory value; and (3) that the evidence was, to some extent, irreplaceable. *United States v. Lewis,* 40 F.3d 1325, 1340 (1st Cir.1994); *United States v. Femia,* 9 F.3d 990, 993–94 (1st Cir.1993). The dispositive factor is often whether the defendant can show that the Government was acting in bad faith. *Lewis,* 40 F.3d at 1340. Maravilla has failed to show that the Government acted in bad faith when the shirt was destroyed. Accordingly, the Court denies this argument for postconviction relief.

 Maravilla also claims that the Government committed prosecutorial misconduct. He argues that it was misconduct when the prosecutor at trial failed to refer to the .22 caliber bullet and the gas station attendant's report that are the subject of Maravilla's *Brady* claim. The Court above has denied Maravilla's *Brady* claim. For the same reasons that the Court denied the *Brady* claim, the Court denies Maravilla's claim regarding the prosecutor's failure to refer to this evidence. Maravilla's remaining claims of prosecutorial misconduct are that the prosecutor actively participated in the investigation of the case and that the prosecutor improperly mentioned her personal beliefs in her closing statement when she used the phrase "I submit to you." Summary dismissal of section 2255 claims is appropriate where the claims are facially inadequate. *Lema,* 987 F.2d at 51. Maravilla's remaining claims of prosecutorial misconduct are facially inadequate. Accordingly, the Court hereby summarily dismisses them.

WHEREFORE, the Court hereby denies petitioner's motion for postconviction relief.

**IT IS SO ORDERED.**