# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-2231
_____

United States of America

*Plaintiff - Appellee*

v.

Carlton P. Strother

*Defendant - Appellant*

_____

No. 12-2347
_____

Carlton P. Strother

*Movant - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 17, 2013
Filed: February 27, 2013
[Unpublished]
_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

Carlton Strother was convicted of two counts of conspiracy, thirteen counts of aggravated identity theft, and ten counts of access device fraud, in violation of 18 U.S.C. §§ 371, 1028, 1028A, and 1029. He was sentenced to 234 months' imprisonment. After his convictions and sentence were affirmed on direct appeal, United States v. Jenkins-Watts, 574 F.3d 950 (8th Cir. 2009), Strother moved to vacate, set aside, or correct his sentence. Strother argued, among other things, that he had been denied his Sixth Amendment right to effective assistance of counsel and that his sentence was illegal. Following an evidentiary hearing, the district court[1] corrected Strother's sentence but otherwise denied the motion. The district court later granted a certificate of appealability on two issues: (1) whether trial counsel failed to convey a plea offer and (2) whether the district court sentenced Strother above the statutory maximum for access device fraud. We affirm.

## I. Background

In August 2006, a grand jury returned a thirty-seven count superseding indictment, alleging that Strother, along with numerous co-defendants, had engaged in fraudulent schemes involving the use of stolen identities to obtain credit and loans. Shortly thereafter, attorney Kenton Hall was appointed to represent Strother.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

According to Hall, Strother planned to exercise his right to a jury trial: "Mr. Strother told me early on in our relationship he wasn't interested in pleading guilty. He didn't want me to bring him any plea offers. He was only interested in resisting the case and going all the way." Hall testified that the government made no plea offers during his representation of Strother, but that if it had, Hall would have relayed them to his client. In January 2007, Strother terminated Hall and retained Martin Warhurst as his attorney.

Warhurst offered a two-level fee arrangement, charging $15,000 if the case "was disposed of without trial by either guilty plea or dismissal" or $30,000 if the case went to trial. Strother paid Warhurst $30,000. Warhurst and Strother discussed the case numerous times, both in person and over the telephone. Warhurst testified that he believed that the government's case was strong, and he told Strother so. According to Warhurst, Strother did not want to plead guilty and did not want to pursue a plea agreement: "[Strother] was always adamant that he wanted to go to trial. I believe it was my obligation to explore other options and he and I discussed that."

Warhurst and Assistant United States Attorney John Cowles occasionally discussed whether Strother would plead guilty. Warhurst asked Cowles to calculate Strother's possible sentencing range under the United States Sentencing Guidelines (Guidelines). By e-mail dated May 6, 2007, Cowles submitted his calculations to Warhurst, explaining that if Strother pleaded guilty, the government would be willing to forego filing additional charges against him. Cowles estimated that Strother would face 6.75 years if he pleaded guilty pursuant to a plea agreement, between 5.8 and 8.75 years if he pleaded guilty without an agreement, and 10.5 years or more if he was found guilty by a jury. Warhurst testified that he explained the Guidelines to Strother, that he printed the e-mail for Strother's review, and that he recommended pursuing a plea agreement. When asked whether he found Cowles's calculations to be accurate, Warhurst replied, "I thought, frankly, it underestimated [Strother's] risk at trial."

A jury convicted Strother on the charges set forth above. At sentencing, the district court determined that Strother's Guidelines sentencing range was between 168 and 210 months' imprisonment. The district court concluded, "I think that a sentence at the top end of the guideline range and one consecutive two-year sentence is sufficient to address all of the statutory concerns [in 18 U.S.C. § 3553(a)]." See 18 U.S.C. § 1028A(a)(1) and (b) (mandating a consecutive two-year sentence for aggravated identity theft). The district court then pronounced a 60-month sentence on the conspiracy counts (counts 1 and 2) to run concurrent with a 210-month sentence on the access device fraud counts (counts 20-30) and a consecutive 24-month sentence on the aggravated identity theft counts (counts 3, 4, 6-14, 17, and 18), resulting in a total sentence of 234 months' imprisonment. Fifteen days later, the district court entered judgment, which maintained the 234-month term of imprisonment, but revised the sentence as follows:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 30 months on count 1 to run concurrently to count 2, but to run consecutively to all other counts; 60 months on count 2 to run concurrently to all counts; 180 months on counts 20-30 to run concurrently to all counts; and 24 months on counts 3,4, 6-14, 17 and 18 to run concurrently to each other, but consecutively to counts 1, 2, 20-30.

In October 2010, Strother moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, raising eleven grounds for relief. The district court granted a hearing on two grounds: (1) whether counsel failed to convey a plea offer to him and (2) whether he was sentenced above the 15-year statutory maximum term of imprisonment for access device fraud. In support of its opposition to the motion, the government filed an affidavit by Warhurst, wherein Warhurst stated that he had engaged in plea negotiations with the government and had "kept Mr. Strother advised of all negotiations and relayed all plea offers." The parties ultimately decided to submit the sentencing issue on the basis of their briefs. At the evidentiary hearing,

Strother, Hall, and Warhurst testified regarding the plea offer. Strother sought to call upon Cowles to testify, but the district court did not compel his testimony, finding that it would be irrelevant.

> All Mr. Cowles can say is that I prepared the e-mail and I caused it to be transmitted to Mr. Warhurst. And at some point Mr. Warhurst communicated back to him that the plea offer was not accepted. That doesn't in any way tend to show that Mr. Warhurst failed to communicate it to Mr. Strother, that Mr. Strother didn't receive it or didn't understand it[,] or that Mr. Strother either wanted to accept it or reject it.

The district court also struck from the record an affidavit Cowles had submitted.

Strother testified that he had committed the offenses of conviction, but that he "didn't know [he] could just stand up and plead guilty." According to Strother, neither attorney told him that he could enter a guilty plea with the court or engage in plea negotiations with the government. When asked why he did not know he could enter a guilty plea, when he had done so in other cases, Strother replied, "I've never been in federal court before[.]" Strother also testified that Warhurst did not explain the potential sentence he faced and did not share the May 6, 2007, e-mail with him, despite the fact that Strother had admitted his guilt to Warhurst. Strother testified that he would have accepted the plea offer set forth in the government's e-mail had he known about it.

The district court found that Warhurst had communicated the plea offer to Strother and that Strother had rejected it because he believed that he would prevail at trial. With respect to the sentencing issue, the district court concluded that the 210-month sentence for access device fraud was illegal and that the entry of judgment could not correct its oral pronouncement of sentence because it was untimely. See 18 U.S.C. § 1029(c)(1)(A)(ii) (limiting the term of imprisonment to 15 years for certain

offenses set forth under subsection (a)); Fed. R. Crim. P. 35 (2009) (permitting the court to correct "arithmetical, technical, or other clear error[s]" within 7 days of sentencing). The district court then corrected Strother's sentence, consistent with its earlier judgment, and ordered the clerk to file an amended judgment and commitment order, stating, "The Court's original intention was to sentence Strother to 234 months' imprisonment, and the Court continues to believe that 234 months is the appropriate total sentence." D. Ct. Order of May 5, 2012, at 4.

## II. Discussion

### A. Ineffective Assistance of Counsel

We review *de novo* the district court's determination that counsel did not render ineffective assistance to the defendant. Covey v. United States, 377 F.3d 903, 906 (8th Cir. 2004). "[F]indings of underlying predicate facts are reviewed for clear error." Id.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. To establish a claim for ineffective assistance of counsel, a § 2255 movant must demonstrate that counsel's representation was deficient and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984). The Supreme Court has held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). Defense counsel's performance is thus deficient if counsel allows a formal plea offer "to expire without advising the defendant or allowing him to consider it[.]" Id.

Strother argues that Warhurst's performance was deficient because he failed to communicate the plea offer.[2] The district court found that Warhurst's testimony to the contrary was credible. The undisputed fact that Strother paid the $30,000 fee shortly after retaining Warhurst, as well as Hall's testimony that Strother was adamant about proceeding to trial, corroborate counsel's testimony. We see no clear error in the district court's finding that Warhurst communicated the plea offer to Strother. Strother thus has failed to show that counsel's performance was deficient.

Strother contends that the district court committed reversible error when it found Cowles's testimony irrelevant. He argues that Cowles could have explained what occurred after the May 6, 2007, plea offer was extended. Cowles's testimony, however, would have been limited to whether the offer was accepted or rejected. Any testimony regarding what Warhurst said in response to the plea offer would constitute inadmissible hearsay. Strother also argues that Cowles knew whether other plea offers were extended. The only evidence implying that there might have been more than one offer was Warhurst's statement that he "kept Mr. Strother advised of all negotiations and relayed all plea offers." Warhurst testified that the May 6, 2007, e-mail constituted the only plea offer and that, to the extent his affidavit implied otherwise, it was incorrect. In light of the evidence, the district court did not err in declining to compel Cowles's testimony.

## B. Corrected Sentence

Strother argues that a presumption of vindictiveness applies to his corrected sentence because the district court increased the sentence without hearing additional evidence or offering any explanation. See North Carolina v. Pearce, 395 U.S. 711, 726 (1969) (holding that "whenever a judge imposes a more severe sentence upon a

---

[2]We assume without deciding that the May 6, 2007, e-mail constituted a formal plea offer.

defendant after a new trial, the reasons for his doing so must affirmatively appear"), *overruled in part by* <u>Alabama v. Smith</u>, 490 U.S. 794, 795 (1989) (holding that "no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial"). Strother contends that the vindictive sentence violates the Due Process Clause and must be reduced by 30 months. Strother has not explained how his sentence was increased, however, when neither the total sentence nor the individual sentences are greater than they were in the district court's oral pronouncement of sentence.

It is undisputed that the 210-month sentence for access device fraud was illegal. In correcting Strother's sentence, the district court reduced the term of imprisonment to 180 months, the maximum term allowed under the statute. <u>See</u> 18 U.S.C. § 1029(c)(1)(A)(ii). It also reduced the 60-month sentence for count one to 30 months' imprisonment and ordered it to run consecutively to the 180-month sentence. The sentence thus was restructured in such a way that neither the total sentence, nor the sentences on the individual counts of conviction, were increased. <u>See</u> <u>United States v. Gruenberg</u>, 53 F.3d 214, 215 (8th Cir. 1995) (per curiam) (concluding that "when the district court corrects an illegal concurrent sentence under Rule 35, the court may order the corrected sentence to run consecutively to legal sentences on other counts, at least where—as here—the net term of imprisonment originally imposed is not lengthened"). Accordingly, no presumption of vindictiveness attaches to the corrected sentence, and thus no Due Process Clause violation occurred.

III.

The judgment is affirmed.

_____